# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SYNOVUS BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:12-CV-3598-VEH |
| | ) |
| **RALPH Q. SUMMERFORD,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

## I.   PROCEDURAL HISTORY

The Plaintiff, Synovus Bank (the "Bank"), initiated this action on October 15, 2011. (Complaint, doc. 1). The Bank sued two individuals, Tarrie H. Hyche ("Hyche") and Ralph Q. Summerford ("Summerford"), for their alleged failure to pay when due a promissory note in the principal amount of $3,424,568.86. The Bank attached various loan documents to its Complaint. (Ex. A to Complaint, doc. 1-1).

On October 22, 2012, a Notice of Bankruptcy proceedings initiated by Hyche was filed into the court record. (Notice, doc. 8). Although Hyche purported to "remove" this action to bankruptcy court (*see* Notice, doc. 10), on December 5,

2012, this court found that such removal was ineffective, that the claims against Hyche and Summerford were joint and several, that the claims against Hyche were stayed by his bankruptcy proceeding but that the claims against Summerford were not stayed, and gave Summerford an opportunity to respond to the Bank's request that the court sever and dismiss its claims against Hyche and proceed with its claims against Summerford.  (*See* Order, doc. 12).  On December 17, 2012, Summerford filed his Answer to the Bank's Complaint and asserted seven counterclaims against the Bank.  (Summerford's Answer and Counterclaims, doc. 13).  On December 19, 2012, Summerford responded to the court's most recent order and asked the court to direct reference of the Bank's claims against him to the bankruptcy court or, in the alternative, to stay this action pending conclusion of Hyche's bankruptcy court proceedings.  (*See* Response, doc. 14).  The court declined to refer the Bank's claims against Summerford, severed the Bank's claims against Hyche, and dismissed those claims without prejudice.  (Order, doc. 15).  Summerford then moved this court to reconsider its prior order.  (*See* Motion To Amend/Correct, doc. 19).  The court declined.  (Order, doc. 26.)

    Now pending before the court is the Bank's Motion for Judgment on the Pleadings, filed on February 14, 2013 (the "Motion," doc. 23).  The Motion seeks partial judgment, in that it seeks only that the court dismiss with prejudice

Summerford's counterclaims against the Bank.  Summerford has opposed the Motion, and the Bank has replied.  (Docs. 24, 25).  The Motion therefore is under submission.

## II. APPLICABLE STANDARD

The Motion states that it is brought pursuant to FED. R. CIV. P. 12(c), which provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Because this matter is presented on Motion for Judgment on the Pleadings, the court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir.2001); *see also Cunningham v. District Attorney's Office for Escambia Cy.*, 592 F.3d 1237, 1255 (11th Cir.2010) (similar).  In evaluating the Motion, the court takes as true all well-pleaded factual allegations in the adversary's pleadings, and does not credit contravening assertions in the movant's pleadings.

"Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings....  We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Cunningham*, 592 F.3d at 1255 (internal quotes omitted).  The Court "need not accept as true,

however, conclusory legal allegations made in the complaint." *Andrx Pharm., Inc. v. Elan Corp.*, 421 F.3d 1227, 1230 n. 1 (11th Cir.2005).  Thus, "[a] motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008); *see also Jiles v. United Parcel Serv., Inc.*, 413 F.App. 173, 174, (11th Cir. 2011)("Dismissal [under Rule 12(c)] is not appropriate unless the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).")

Further, in considering a motion for judgment on the pleadings, the court generally cannot consider matters outside the pleadings without converting the motion to a motion for summary judgment.  *See* FED. R. CIV. P. 12(d).  However, "[b]ecause Rule 10(c) incorporates into the pleadings all exhibits attached thereto and materials referred to, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion."  5C Federal Practice and Procedure Civ. § 1371 (3rd ed.).

With regard to the instant Motion, all the documents that have been presented to the court were attached to the Complaint and are central to the pleadings; none

have been challenged as lacking authenticity or completeness.  Indeed, <u>both</u> parties have relied on the documents.  Therefore, the court need not convert the motion to a motion for summary judgment.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (applying Eleventh Circuit Rule 12(b)(6) decisions adopting the "incorporation by reference" doctrine to motions for judgment under Rule 12(c)).

Additionally, it is clear that the Motion is also alternatively brought, at least as to Summerford's breach of contract claim, pursuant to FED. R. CIV. P. 12(e). (*See* Motion, par. 14 ("If the Court finds that Summerford may pursue this contract claim, then [the Bank] submits respectfully that Summerford should have to amend Count VI to state more definitely how the ... Agreement was allegedly breached.")).

FED. R. CIV. P. 12(e) provides:

> (e) Motion for a More Definite Statement. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

The court notes that Summerford has been on notice since the Motion was filed that the Bank alleges that Summerford's contract claim is insufficiently pled. Further, Summerford is represented by counsel, counsel has not filed an amended

counterclaim, and the time period for such a pleading expired, under the court's Scheduling Order, on April 1, 2013.[1]  Therefore, absent good cause shown, the court will not allow Summerford to amend his counterclaims outside of the time period set in the court's Scheduling Order.  Scheduling orders "may be modified only 'upon a showing of good cause.' [Federal Rule of Civil Procedure] 16(b).  This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  *See also* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")

### III.  SUMMERFORD'S COUNTERCLAIMS

Summerford asserts, in shotgun fashion,[2] seven counterclaims: Count I, Declaratory Judgment; Count II, Improper/Intentional/Wanton/Reckless/Negligent Loan Origination/Handling/Administration; Count III, Fraud/Misrepresentation/ Suppression/Promissory Fraud/Fraud in the Inducement; Count IV, Promissory

---

[1] The parties have mutually sought multiple modifications of the Scheduling Order to extend certain expert disclosure deadlines, but have not sought to extend any other deadlines.  All of such motions have been granted.  *See* Motion, doc. 21, granted by Order, doc. 22; *see also* Motion, doc. 27, granted by margin entry dated May 6, 2013.

[2] Although Summerford only asserts his counterclaims against one party, the Bank, his counterclaims are still shotgun in that all of the factual allegations are contained in paragraphs 1 through 17, and then he references back, as to each counterclaim, to all of those allegations and then conclusorily states that those allegations entitle him to the relief sought in each count.

Estoppel; Count V, Equitable Estoppel; Count VI, Breach of Contract; and Count VII, Breach of Good Faith and Fair Dealing. (Doc. 13). Unfortunately, nowhere does any party set out the elements of any of those claims. Rather, the Bank relies strictly on the release provision (the "Release") contained within the April 17, 2012 Note Modification Agreement (the "Agreement;" Doc. 1-1, pp. 13-31).

Summerford admits the existence of the loan and that the loan was last renewed on April 17, 2012. (Doc. 13, ¶¶ 6, 7, 8, and 11 of the Answer portion). He admits that he signed the Agreement. (Doc. 13, ¶¶ 10, 11, and 14 of the Answer portion; ¶ 14 of the Counterclaim portion). He avers that the initial loan amount was $3.4 Million dollars. (Doc. 13, ¶ 5 of the Counterclaim portion). He relies upon the Agreement for all of his counterclaims. (Doc. 13, ¶¶ 14, 15, and 18 - 39 of the Counterclaim portion).

IV. ANALYSIS

    A.    **All Counterclaims in Existence On April 17, 2012, Are Due To Be Dismissed with Prejudice as Barred by the Release**

The Release[3] appears at paragraph 7 of the Agreement and states as follows:

> Release of the Lender. In consideration of the Lender entering into this Agreement, and without any contingency, precondition or condition

---

[3] The Agreement states that it is governed by Alabama law. Agreement, ¶ 15. Additionally, both parties have relied on Alabama law in their briefs. Accordingly, the court has applied Alabama law.

> subsequent, each Borrower . . . fully and forever releases . . . any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character . . . whether direct or indirect, known or unknown, disclosed or hidden, at law or in equity, which such Borrower had, has or will have against the Lender . . . arising or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur <u>at any time in the past up to and including the Execution Date</u>, including, without limitation, any claims relating to the Loan, the Loan Documents, the Collateral, any act or event relating to the Lender's (or its designees') possession or use of the Collateral, and any act or event relating to the Lender's administration or servicing of the Loan, this Agreement or any other transaction (such as the Additional Extension, whether ultimately granted or not) contemplated by this Agreement.

(Emphasis supplied).

The court agrees that, pursuant to the Release, all of Summerford's counterclaims for causes of action that existed on or before April 17, 2012, the date of the Agreement's execution, have been released and are accordingly due to be dismissed with prejudice. Under established Alabama law, such release provisions are enforced in accordance with their plain terms. Ala. Code § 12–21–109 ("All receipts, releases and discharges in writing ... must have effect according to their terms and the intentions of the parties thereto."); *see also American Homes & Land Corp. v. C.A. Murren & Sons Co.*, 990 So.2d 871, 876 (Ala. 2008) ("absent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four

8

corners of the document itself"); *Branch Banking & Trust Co. v. Howard*, 2013 WL 172903, at *2 (S.D. Ala. January 16, 2013) (relying on the foregoing authority in granting motion to dismiss under FED. R. CIV. P. 12(b)(6) counterclaims of obligors against lender based on release provision contained in forbearance agreement). Although Summerford's Response is confusingly written, a close reading shows that he does not assert that his claims that existed on April 17, 2012, survive. *See* Response, doc. 24, at p. 8 ("The release provision never contemplated the release of future claims, a fact that is patently and obviously clear from the release language itself. Thus, on this basis alone, [the Bank's] Motion *as it relates to post-Note-Modification claims and conduct* should be denied.) (emphasis by underlining in original; emphasis by italics added). For all these reasons, the Motion is due to be **GRANTED** as to all of Summerford's counterclaims that were in existence on or prior to April 17, 2012, and such counterclaims are due to be **DISMISSED WITH PREJUDICE**.

    **B.    All Other Counterclaims Are Due To Be Dismissed for Failure To Plead Such Claims Adequately**

As explained in Section II, *supra*, the standard for a motion to dismiss under Rule 12(c) is the same standard that is applied under Rule 12(b)(6). Therefore, the court now analyzes each post-April 17, 2012, counterclaim asserted by

Summerford, and determines that none of them contain "sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the [counterclaim] defendant is liable for the alleged misconduct." *Jiles*, 413 Fed.App. at 174 (citing *Bell Atlantic Corp. v. Twombly*).

Additionally, as noted at footnote 2, *supra*, although Summerford only asserts his counterclaims against one party, the Bank, his counterclaims are still shotgun in that all of the factual allegations are contained in paragraphs 1 through 17, and then he references back, as to each counterclaim, to all of those allegations and then merely conclusorily states that those allegations entitle him to the relief sought in each count. Such conclusory statements are insufficient. To the extent that such claims lie in fraud, they are also insufficiently pled under FED. R. CIV. P. 9(b), which requires, "[i]n alleging fraud ..., a party must state with particularity the circumstances constituting fraud ...." Further, to the extent that Summerford's counterclaims arise out of the Bank's election to sue him for the unpaid loan balance without having first foreclosed on loan collateral, he has alleged no facts in his counterclaims which create a duty for the Bank to foreclose on collateral before filing suit against Summerford. As set out in the Motion,

> "[a]bsent an agreement to the contrary, a secured lender may proceed on all of its remedies simultaneously or elect to pursue these remedies at different times. *Triple J Cattle, Inc. v. Chambers*, 551 So. 2d 280,

10

> 282 (Ala. 1989). *** [Further,] a party cannot use an alleged duty to mitigate as 'a *post hoc* vehicle for superimposing new advantageous terms on (and for eradicating disadvantageous terms from) their bargain…[C]ompelling a lender to foreclose on collateral instead of suing to recover unpaid debts (in the absence of any contract provision imposing such a condition precedent) would stretch the consent of mitigation beyond all reasonable boundaries.' *Whitney Bank v. Point Clear Development, LLC*, 2012 WL 2277597, at *4 (S.D. Ala. June 18, 2012) (citations omitted) (applying Alabama law to hold secured party had no duty to foreclose before filing suit)."

(Doc. 23, p.7, fn. 4) (alterations supplied).

Finally, although Summerford conclusorily complains of actions or omissions by the Bank which, he claims, caused the Bank not to extend the loan maturity date beyond July 1, 2012, the Agreement, which undisputedly extended the maturity date "from April 17, 2012, until July 1, 2012," (doc. 1-1, ¶ 3.(a)), expressly disavowed any final agreement between the Bank and Summerford as to any further extension of the maturity date beyond July 1, 2012 (doc. 1-1, ¶ 3.(f)).  The Agreement also contains a "merger clause," stating that there are no oral representations or promises not set out in the Agreement, and stating that any alteration or modification of the Agreement's terms must be in "a writing of subsequent date hereto signed by all parties in interest ...." (Doc. 1-1, ¶ 17.).  Summerford's counterclaims do not allege the existence of any such writing.  To the contrary, he expressly alleges that the parties' negotiations "culminated in the execution of [the] April 17, 2012 ...

Agreement." (Doc. 13, ¶ 14 of the counterclaims portion).  Absent such a post-April 17, 2012, fully executed writing, any attempt to amend Summerford's counterclaims to assert a counterclaim based upon such alleged actions or omissions by the Bank would appear to be futile.

As previously noted, Summerford is represented by counsel; the deadline set by the Scheduling Order to amend pleadings has expired; the parties have sought and received extensions of other deadlines set in the Scheduling Order; no party has asked to extend the deadline to amend pleadings; Summerford has been on notice of the Bank's allegations that his pleadings are insufficient since the filing of this Motion; and Summerford has not sought to amend his Counterclaim.  The Bank's Motion, therefore, is also due to be **GRANTED** as to Summerford's post-April 17, 2012, counterclaims, and those counterclaims will be **DISMISSED WITH PREJUDICE**.[4]

---

[4] A district court is not required to grant a party leave to amend his complaint *sua sponte* when the party, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court. *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*).

## V.     CONCLUSION

For the reasons set out above, the Motion To Dismiss is due to be, and hereby is, **GRANTED**.  A separate partial final judgment order will be entered.

**DONE** and **ORDERED** this the 10th day of May, 2013.

                                                                                      _____
                                                                                      **VIRGINIA EMERSON HOPKINS**
                                                                                      United States District Judge