FILED
2014 Jul-02  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SYNOVUS BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-3598-VEH** |
| | ) |
| **RALPH Q. SUMMERFORD,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

On October 15, 2012, the plaintiff, Synovus Bank, filed this action for breach of a promissory note, and alternatively for unjust enrichment, against the defendants, Ralph Q. Summerford and Tarrie Hyche. (Doc. 1). On December 26, 2012, after Hyche filed a notice of bankruptcy, the court severed the plaintiff's claim against Hyche and dismissed that claim without prejudice. (Doc. 15).[1] The action continued as to defendant Summerford.

The case comes before the court on the motion for summary judgment filed by Synovus (doc. 36), and the motion to amend the motion for summary judgment filed

---

[1] On November 16, 2012, Hyche filed a notice of bankruptcy. (Doc. 8.) Pursuant to 11 U.S.C. § 362, this action was then automatically stayed against Hyche, pending the outcome of the bankruptcy proceedings, until this court ultimately dismissed Hyche.

by Synovus (doc. 42). For the reasons stated herein, the motion to amend will be **DENIED**, the motion for summary judgment will be **GRANTED in part** and **DENIED in part**, and the case will be set for trial.

## I.   STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

2

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact."

3

*Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.    FACTS

Synovus made a commercial loan to Summerford and Hyche to acquire certain property located on Smith Lake in Walker County, Alabama (the "Loan"). (Doc. 1-1

at 2).[2] The most recent promissory note regarding this loan is dated December 19, 2011 (the "Note"). (Doc. 1-1 at 11).[3] In this document, Summerford and Hyche, jointly and severally, agree to pay to Synovus the principal amount of $3,424,766.86. (Doc. 1-1 at 11). The Note set the maturity date of the loan to April 17, 2012. (Doc. 1-1 at 11). It also provided that:

– the borrowers agreed "to pay interest on the outstanding principal balance from December 19, 2011[,] at the rate of 5.0% per year until the interest rate changes" (doc. 1-1 at 11);

– the new rate, called the "index rate" in the promissory note, would be 1.0 % above "Lender's prime, which is the rate used by Lender to set interest rates at which loans are made to various customers. Loan may be made at, above[,] or below said prime rate" (doc. 1-1 at 11);

--------

[2] The loan was actually made by First Bank of Jasper, which was formerly known as First National Bank of Jasper, a division of Synovus. For ease of reference, the court will refer to the bank as Synovus.

[3] The loan's history is extensive. It was refinanced by Synovus on or about August 24, 2009. (Doc. 1-1 at 2). The maturity date on the promissory note was February 24, 2010. (Doc. 1-1 at 2). The principal amount of that loan was $3,424,568.86. (Doc. 1-1 at 2). On March 1, 2010, the bank modified the loan to extend the maturity date to June 24, 2010. (Doc. 1-1 at 4). On June 24, 2010, the bank again extended the maturity date of the loan from June 24, 2010, to October 22, 2010. (Doc. 1-1 at 5). A new promissory note dated November 19, 2010, reflects that the bank, *inter alia*, changed the maturity date of the loan to May 19, 2011. (Doc. 1-1 at 6). A May 19, 2011, modification agreement extended the maturity date to September 16, 2011. (Doc. 1-1 at 8). Another promissory note dated September 16, 2011, extended the loan's maturity date to November 19, 2011. (Doc. 1-1 at 9). The December 19, 2011, promissory note is the last promissory note.

– the rate <u>could</u> change as often as "daily," but <u>would</u> change "when the index rate changes" (doc. 1-1 at 11);

– the rate would never be below 5.0% (doc. 1-1 at 11);

– after the maturity date of the loan, the borrowers would continue to pay the same variable rate of interest "on the unpaid balance of the [N]ote owing after maturity, and until paid in full" (doc. 1-1 at 11);

– the borrowers would pay late fees "on the portion of any payment not made within 10 days after it is due equal to 5% of the unpaid amount with a minimum of $100" (doc. 1-1 at 11);

– accrued interest would be paid monthly "beginning January 17, 2012" (doc. 1-1 at 11);

– the principal would be paid back by the maturity date of April 17, 2012 (doc. 1-1 at 11); and

– the borrowers agreed "to pay all costs of collection, replevin or any other similar type of cost if [they] are in default. In addition, if [Synovus] hire[s] an attorney to collect this [N]ote, [the Borrowers] also agree to pay any fee [Synovus] incur[s] with such attorney plus court costs . . ." (Doc. 1-1 at 12).

The defendant does not dispute the fact that he entered into this agreement, nor does he dispute the terms of same. (Doc. 36 at 3-8; doc. 39 at 5-10).

6

On April 17, 2012, the Note was modified by a Note Modification Agreement executed by and among Synovus, Hyche, and Summerford (the "Note Modification Agreement"). (Doc. 1-1 at 13). At the time the Note Modification Agreement was executed, the loan was secured by mortgages on three separate pieces of property. (Doc. 1-1 at 13; doc. 42-1 at 3; doc. 42-2 at 1-19). The Note Modification Agreement refers to this property as "the Mortgaged Property." (Doc. 1-1 at 13). The modification provided, in pertinent part:

2.    <u>Amounts Owing on the Loan</u>. [Summerford and Hyche] confirm with the Lender and agree that:

(a)    as of March 26, 2012, the principal amount owing on the Loan is $3,424,766.86; and

(b)    as of March 26, 2012, the Borrowers owe $26,279.91 in accrued but unpaid interest on the Loan, with additional interest accruing at the rate of <u>$380.53</u> per diem, and $11,048.69 in unpaid late fees on the Loan.

3.    <u>Extension of the Loan</u>.

(a)    The Note is hereby modified so that the Maturity Date is hereby extended from April 17, 2012, until July 1, 2012, at which time the Loan will be due and payable in full.

(b)    If on June 30, 2012 (by or before the close of business) the conditions set forth in Section 3(c) have been met, the Maturity Date will be further extended for an additional term of two (2) years, until July 1, 2014 (the "Additional Extension").

(c)    Without limitation, in order for the Lender to Agree to the

7

Additional Extension, the following conditions must be satisfied:

. . .

       b.    The ratio of the principal balance of the Loan divided by old and new collateral acceptable to the Lender in its sole discretion must not exceed one hundred percent (100%). Collateral acceptable to the Lender shall mean the following: (i) the Mortgaged Property, in which the Lender holds a first priority mortgage security interest, and the value of which shall be based on a current appraisal reviewed by and accepted by the Lender, and (ii) all other collateral agreed upon by the Parties to be mortgaged or pledged to the Lender by the Borrowers, subject to the Lender's normal underwriting standards and guidelines for such collateral, including appraisal, security documentation, survey, title insurance and customary requirements for collateral of the type provided, and **with the acceptability of such collateral to be in the sole judgment and discretion of the Lender**;

. . .

       d.    The Borrowers shall have paid or reimbursed the Lender for all expenses ("Loan Expenses") associated with this Agreement and with the transactions contemplated by the Extension Loan Documents or required by the Lender in connection with the Additional Extension, including but not limited to, appraisal fees, appraisal review fees . . ..

. . .

     (f)    ALTHOUGH THE BORROWERS AND THE LENDER

8

HAVE REACHED SUBSTANTIAL AGREEMENT REGARDING THE BUSINESS TERMS BY WHICH THE LOAN MAY BE EXTENDED UNTIL JULY 1, 2014, THE BORROWERS AND THE LENDER ACKNOWLEDGE AND AGREE WITH EACH OTHER, HOWEVER, THAT SUCH ADDITIONAL EXTENSION IS SUBJECT TO, AMONG OTHER THINGS, THE IDENTIFICATION AND ACCEPTABLE VALUATION OF ADDITIONAL COLLATERAL TO ACHIEVE THE REQUIRED LOAN TO VALUE RATIO OF NOT MORE THAN 100%, AND THE EXECUTION AND DELIVERY OF DEFINITIVE EXTENSION LOAN DOCUMENTS EVIDENCING THE ADDITIONAL EXTENSION AND THE ADDITIONAL COLLATERAL, IN A FORM MUTUALLY AGREEABLE TO THE LENDER AND ITS ATTORNEYS AND THE BORROWERS AND THEIR ATTORNEYS, AND IT IS ACKNOWLEDGED AND UNDERSTOOD THAT THERE CAN BE NO ASSURANCE THAT THE COLLATERAL OFFERED BY THE BORROWERS ULTIMATELY WILL BE ACCEPTABLE TO THE LENDER OR THAT DEFINITIVE EXTENSION LOAN DOCUMENTS WILL BE AGREED TO, AND ACCORDINGLY, IT IS UNDERSTOOD AND AGREED THAT THE PARTIES ULTIMATELY MAY BE UNABLE TO REACH AGREEMENT FOR THE ADDITIONAL EXTENSION. RECOGNIZING AND CONFIRMING SUCH POSSIBILITY, THE BORROWERS AGREE THAT THERE SHALL BE NO CLAIM AVAILABLE TO THEM, IN CONTRACT OR TORT, IN THE EVENT THAT THE MATURITY DATE OF JULY 1, 2012, IS NOT FURTHER EXTENDED.

(Doc. 1-1 at 14-17) (emphasis in original). No new collateral was ever mortgaged by either Summerford or Hyche after this agreement was entered into. (Doc. 37-1 at 5). No new loan documents were executed to extend the maturity date of the Loan beyond July 1, 2012. (Doc. 37-1 at 6).

On August 31, 2012, Synovus made demand on Summerford and Hyche for

immediate payment in full of all amounts owed on the Loan pursuant to the terms of the December 19, 2011, promissory note and the April 17, 2012, modification. Neither has paid.

Jeffrey Spielberger is a Managed Assets Officer for Synovus Bank. (Doc. 37-1 at 2). In his affidavit, he states that he is "personally involved in, and responsible for, Synovus'[s] collection activities with respect to the loan [at issue in this case]." (Doc. 37-1 at 2). In support of the statements in his affidavit, he references records which he states "were made at or near the time of the event recorded by a person with knowledge of the event and charged with the responsibility of recording such events," and "are kept in the ordinary course of [Synovus's] regularly conducted business activity, which is Synovus'[s] customary practice." (Doc. 37-1 at 2-3).  Spielberger states that, as of September 17, 2013, the following amounts were due and payable on the loan:

| | |
|---|---|
| $3,424,766.86 | principal |
| $173,902.05 | accrued interest |
| $13,548.69 | late fees |
| $121,751.76 | attorneys' fees and expenses |
| $5,500.00 | appraisal costs |

(Doc. 37-1 at 4). Summerford offers no evidence to dispute these sums, and does not challenge the admissibility of the affidavit or the documents it references. Further, these sums were listed as part of the Synovus's statement of fact number 14 in

10

support of the motion for summary judgment. In response to this fact, the defendant "[a]dmitted that Summerford cannot dispute the outstanding principal amount owed on the 'Loan.'" (Doc. 39 at 7). Summerford did not dispute the remaining amounts, and they are therefore deemed to be admitted.[4]

Spielberger attaches to his affidavit what he has identified as "a true and correct copy of a Synovus principal, interest and late fee payoff statement for the Loan as of September 17, 2013." (Doc. 37-1 at 4). The document to which he refers shows that, as of September 17, 2013, outstanding principal due on the loan was $3,424,766.86, with accrued interest being $173,902.05, and late charges equaling $13,548.69. (Doc. 37-1 at 35). He also states that "[i]nterest continues to accrue on the Loan at the rate of $380.53 per day." (Doc. 37-1 at 5). Summerford offers no evidence to dispute these sums, and does not challenge the admissibility of these

---

[4] The court's summary judgment scheduling order requires that:

The first section [of the brief opposing summary judgment] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 2 at 17) (emphasis in original).

documents, or the statements made therein.

Spielberger's affidavit refers to two documents which he refers to as "true and correct copies of the invoices for . . . appraisal costs" incurred "to determine whether the conditions to the additional extension described in the Note Modification Agreement could be satisfied." (Doc. 37-1 at 5). The first of these documents is an invoice from Wm. Scruggs & Associates for appraisal fees in the amount of $1,500.00. (Doc. 37-1 at 37). The second is an invoice from Real Estate Matrix for appraisal fees in the amount of $4,000.00. (Doc. 37-1 at 39). Summerford offers no evidence to dispute these sums, and does not challenge the admissibility of these documents, or the statements made therein.

Speilberger states that he has "reviewed and approved" the legal bills from Bradley Arant Boult Cummings LLP, which he states "include the above-described collection costs." (Doc. 37-1 at 5). Jennifer Harris Henderson, a partner with the law firm of Bradley Arant Boult Cummings LLP, has submitted her affidavit in which she states that she "has firsthand knowledge of the services rendered by [the firm] on behalf of Synovus in connection with the collection of [this loan]." (Doc. 37-2 at 3). She also states that she is "familiar with the fees being charged to Synovus . . . in this matter," as well as those "charged in this area in matters such as this Lawsuit." (Doc. 37-2 at 3). Henderson's affidavit describes in detail the services the firm performed

12

on behalf of Synovus[5] and then states that "the . . . described fees and expenses billed by [the firm] as of August 30, 2013[,] for services rendered to Synovus in connection with [this Loan] are described on [an attachment to her affidavit]." (Doc. 37-2 at 5). She states that these fees and expenses total $121,751.76 as of August 30, 2013. (Doc. 37-2 at 6). The attachment to which she refers sets out the invoice numbers presented to Synovus by the firm, summarizes the amounts appearing on the invoices presented to Synovus, and separates out the portion which applies only to legal services provided for collecting on the Loan. That amount, as noted on the form, is $121,751.76. (Doc. 37-2 at 13). The actual invoices also appear in the record. (Doc. 37-2 at 14-60; doc. 37-3 at 1-66). The affidavit of J. David Dresher, who states that he is the "billing attorney for this matter," certifies that these time records are accurate, and that they were "prepared contemporaneously with the performance of the work for which the fees are claimed." (Doc. 37-3 at 66). Summerford offers no evidence to dispute these sums, and does not challenge the admissibility of these documents, or the statements made therein.

On February 27, 2014, Synovus filed a motion to amend its summary judgment motion, and attached a second affidavit of Jeffrey Spielberger, wherein he states that,

---

[5] It also goes into extensive detail as to the names and qualifications of the persons who performed those services.

on February 3, 2014, Synovus foreclosed on the property which had secured the Loan. (Doc. 42-1 at 3). He also states: "At the foreclosure sales, Synovus submitted the highest bid for each of the properties, in the amounts of $1,836,750.00, $201,810.00, and $48,360.00." (Doc. 42-1 at 3). He also states that "Synovus'[s] claim in this lawsuit also should be reduced by the same amount, which is $2,086,920.00 in the aggregate." (Doc. 42-1 at 3). He concludes that "[a]s of February 3, 2014, interest is accruing on the Loan at the rate of $148.65 per day." (Doc. 42-1 at 4). No response to this motion to amend has been filed by the defendant.[6]

---

[6] Summerford lists 61 "Additional Disputed Facts" to which Synovus has not specifically responded. Instead, referring to only the first 46 of these facts, Synovus writes:

> Although the Response includes a litany of other "disputed facts," comprised of alleged acts or omissions that occurred or failed to occur prior to the execution of the Note Modification Agreement (see Response at 11-21, ¶¶ 1-46), it appears that these "disputed facts" are submitted solely to support Summerford's contention that Synovus is obligated to foreclose. (See Response passim.) This Court already has found that these allegations do not create a duty of foreclosure on the part of Synovus, and, therefore, these other "disputed" facts are irrelevant. (See Doc. 28 at 10-11.)

(Doc. 41 at 2). The court notes that merely ignoring such facts based on the presumption that the court will agree that they are not material is a dangerous proposition, given that this court's summary judgment scheduling order provides that "*[a]ll additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant.*" (Doc. 2 at 19) (emphasis in original). However, in this case, and as noted in the section which follows, the court agrees with Synovus that it need not consider anything other than facts which bear upon whether the terms of the Note Modification Agreement were followed. Defendant's facts 1-46 concern events which occurred prior to the execution of that agreement and therefore are irrelevant and immaterial, and will not be deemed admitted. The remaining facts offered by Summerford either concern provisions in the agreement, the relevant portions of which are already set out herein, or are merely argument, which will be dealt with in the appropriate section of this opinion. The court

## III.   ANALYSIS

### A.   The Plaintiff Does Not Have To Foreclose Before It Seeks and/or Receives a Money Judgment

The defendant argues:

> On June 23, 2013, Synovus affirmatively demanded the right to foreclose on the property mortgaged for the Loan when it filed its Motion to Stay in the Tarrie Hyche bankruptcy proceeding. That Motion demanded that the automatic stay imposed by the bankruptcy court be lifted so Synovus could "exercise its rights against" the mortgaged property securing the Loan, including, specifically, nonjudicial foreclosure. (Synovus Foreclosure Motion at ¶¶1, 24 (Exh. 4)). In insisting upon its right of foreclosure, Synovus effectively made its choice with respect to Summerford; rather than pursue monetary damages against Summerford, Synovus chose instead to insist upon and demand its right to non-judicial foreclosure. That choice cannot be undone at this point, and Synovus is left with the sole remedy of foreclosing on the property mortgaged for the Loan if the fair market value of that property and any other property pledged to secure the Loan exceeds the amount owed as it does here.

(Doc. 39 at 24-25). The defendant cites no caselaw or other support for this position, which the court previously rejected in its ruling dismissing the defendant's counterclaims. (Doc. 28 at 10); *see also, Triple J Cattle, Inc. v. Chambers*, 551 So. 2d 280, 282 (Ala. 1989) ("""[a]bsent an agreement to the contrary, a secured lender may proceed on all of its remedies simultaneously or elect to pursue these remedies at different times."); *Whitney Bank v. Point Clear Dev., LLC*, CIV.A. 11-0657-WS-M,

---

also omits all four of Summerford's "Additional Disputed Facts" (doc. 39 at 10-11) as irrelevant and immaterial.

2012 WL 2277597 at *5 (S.D. Ala. June 18, 2012) (Steele, J.) ("Alabama courts have expressly declined to impose any such mandatory duty of foreclosure in the mortgage context."). This argument is <u>still</u> without merit.  Regardless, as noted above, it appears that the property has now been foreclosed upon.

###   B.   The Breach of Promissory Note Claims (Count I)

####     1.   *The Plaintiff Is Entitled to Summary Judgment on the Elements of the Claim*

A breach of promissory note claim is merely a type of breach of contract claim. *See, PNC Bank, N.A. v. S. Home Builders, LLC*, 5:13-CV-000961-KOB, 2013 WL 5524108 at *4 (N.D. Ala. Oct. 2, 2013) (Bowdre, J.); *Branch Banking & Trust Co. v. R & T Rentals, L.L.C.*, CIV.A. 10-0518-KD-N, 2012 WL 2872447 at *3 (S.D. Ala. July 12, 2012) (DuBose, J.). "In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 1120537, 2013 WL 6516387 at *6 (Ala. Dec. 13, 2013) (citations omitted). In this case, as shown in the statement of facts set out above, there is no genuine issue of material fact that all of these elements are present.

Still, the defendant argues that he should not be required to repay the sums he

borrowed, because

> the Note Modification Agreement required Synovus to appraise property identified by [Hyche] to allow Synovus to reach a 1 to 1 loan-to collateral ratio. In exchange for the pledging of additional collateral by [Hyche] and the payment of certain development costs by Summerford (in excess of $250,000), the term of the Note was extended for a period of two (2) years until July 2014. Summerford and [Hyche] performed their part of the Note Modification; however, Synovus failed to perform theirs.

(Doc. 39 at ¶11, 13, 14, 17, 19, 20, 21). This argument is without merit.

First, Summerford does not explain which section of the Note Modification Agreement requires Synovus to obtain an appraisal. <u>One</u> of the conditions to the extension, section 3.(c).b., requires that "the ratio of the principal balance of the Loan divided by old and new collateral acceptable to the Lender in its sole discretion must not exceed one hundred percent (100%)." (Doc. 1-1 at 15). "Appraisals" are mentioned thereafter <u>only</u> in defining the phrase "collateral acceptable to the Lender." (Doc. 1-1 at 15). There is no requirement that Synovus obtain an appraisal on any new piece of property pledged by the borrowers. The agreement is clear that such new collateral must be

> agreed upon by the Parties to be mortgaged or pledged to the Lender by the Borrowers, subject to the Lender's normal underwriting standards and guidelines for such collateral, <u>including appraisal</u>, security documentation, survey, title insurance and customary requirements for collateral of the type provided, and **<u>with the acceptability of such collateral to be in the sole judgment and discretion of the Lender</u>**.

17

(Doc. 1-1 at 15) (underlining added; underlining and bold in original). "Appraisal" is only one tool that Synovus <u>could</u> have used to find the collateral to be acceptable. However, it was not <u>required</u> to do so, and Synovus clearly did not have to accept the new collateral.

Second, two appraisals <u>were</u> done on new property in anticipation of the possible extension. Spielberger stated that Synovus appraised two separate pieces of property "to determine whether the conditions to the additional extension described in the Note Modification Agreement could be satisfied." (Doc. 37-1 at 5; doc. 37-1 at 36-39). He has provided copies of invoices from the appraisers. (Doc. 37-1 at 36-39). The defendant does not address Spielberger's statements or these invoices.[7]

Further, by the express terms of the agreement, the additional extension could only occur if the parties entered into a <u>new extension agreement</u> (doc. 1-1 at 15), which did not occur. The Note Modification Agreement is clear that:

> IT IS ACKNOWLEDGED AND UNDERSTOOD THAT THERE CAN BE NO ASSURANCE THAT THE COLLATERAL OFFERED BY THE BORROWERS ULTIMATELY WILL BE ACCEPTABLE TO THE LENDER OR THAT DEFINITIVE EXTENSION LOAN

---

[7] Importantly, the defendant never identifies the collateral that was supposedly "pledged" but not appraised. It is vaguely referenced in the Hyche declaration (doc. 40-2) and the Summerford declaration (doc. 40-6) merely as "additional property," or "additional collateral." The defendant has pointed to no evidence that <u>no</u> appraisals were done, except their conclusory statements to that effect. (Doc. 40-2 at 4; doc. 40-6 at 11-12). The court rejects these statements as the declarations do not indicate how they could have personal knowledge of that fact.

> DOCUMENTS WILL BE AGREED TO, AND ACCORDINGLY, IT IS UNDERSTOOD AND AGREED THAT THE PARTIES ULTIMATELY MAY BE UNABLE TO REACH AGREEMENT FOR THE ADDITIONAL EXTENSION.

(Doc. 1-1 at 17) (emphasis in original). Not only was the agreement clear that <u>there was no agreement to extend an additional two years</u>, it was also clear that <u>there might never be such an agreement</u>. Further, the contract stated:

> RECOGNIZING AND CONFIRMING SUCH POSSIBILITY, THE BORROWERS AGREE THAT THERE SHALL BE NO CLAIM AVAILABLE TO THEM, IN CONTRACT OR TORT, IN THE EVENT THAT THE MATURITY DATE OF JULY 1, 2012, IS NOT FURTHER EXTENDED.

(Doc. 1-1 at 17) (emphasis in original). Nowhere in his response to the motion for summary judgment does Summerford address these sections of the contract.[8]

The Note Modification Agreement says nothing about $250,000 in "development costs." It contains a "merger clause," stating that there are no oral representations or promises not set out in the Agreement, and stating that any alteration or modification of the Agreement's terms must be in "a writing of subsequent date hereto signed by all parties in interest . . .." (Doc. 1-1, ¶ 17). The defendant has identified no writing wherein the plaintiff agreed to extend the maturity

---

[8] Further, even <u>if</u> the maturity date <u>had</u> been extended to July 1, 2014, that date has now passed. There can be no doubt that, at the very least, the loan has now matured.

date if these costs were paid.[9]

### 2. *The Plaintiff Is Entitled to Summary Judgment as to the Amount of Damages through September 17, 2013*

There is no genuine issue of material fact that, as of September 17, 2013, the

<u>amount</u> of damages, was $3,733,969.36, which is comprised of:

| | |
|---|---|
| $3,424,766.86 | principal |
| $173,902.05 | accrued interest |
| $13,548.69 | late fees |
| $121,751.76 | attorneys' fees and expenses |

---

[9] The court has addressed these issues before in this case. As noted in this court's memorandum opinion of May 10, 2013, which dealt with the tort counterclaims which had been asserted by Summerford,

> although Summerford conclusorily complains of actions or omissions by the Bank which, he claims, caused the Bank not to extend the loan maturity date beyond July 1, 2012, the Agreement, which undisputedly extended the maturity date "from April 17, 2012, until July 1, 2012," (doc. 1-1, ¶ 3.(a)), expressly disavowed any final agreement between the Bank and Summerford as to any further extension of the maturity date beyond July 1, 2012 (doc. 1-1, ¶ 3.(f)). The Agreement also contains a "merger clause," stating that there are no oral representations or promises not set out in the Agreement, and stating that any alteration or modification of the Agreement's terms must be in "a writing of subsequent date hereto signed by all parties in interest ...." (Doc. 1-1, ¶ 17.). Summerford's counterclaims do not allege the existence of any such writing. To the contrary, he expressly alleges that the parties' negotiations "culminated in the execution of [the] April 17, 2012 Agreement." (Doc. 13, ¶ 14 of the counterclaims portion). Absent such a post-April 17, 2012, fully executed writing, any attempt to amend Summerford's counterclaims to assert a counterclaim based upon such alleged actions or omissions by the Bank would appear to be futile.

(Doc. 28 at 11).

(Doc. 37-1 at 4).    Synovus is not entitled to summary judgment on the $5,500.00 in appraisal costs incurred in an attempt to finalize the extension. The Note Modification Agreement reflects that Synovus was only entitled to these costs if it agreed to the additional extension, which it did not. (Doc. 1-1 at 15).

### 3.     *A Fact Question Remains as to the Deficiency and the Total Amount of Damages*

According to the motion to amend, the bid placed on the property by Synovus was less than the amount it claims is owed by the defendant. Accordingly, the sale created a deficiency. Because the sale took place after the filing of the motion for summary judgment, the defendant has not yet had a chance to counter the evidence of the sale. That issue is not ripe for summary judgment, and will go to trial. For that reason, the court will deny the motion to amend.[10]

---

[10] To the extent that the defendant argues that he is entitled to a credit for the amount for which the property sold at foreclosure, the court and the plaintiff agree. (Doc. 42). Any judgment rendered will reflect such credit. For that reason, and because the case will go to trial, there is no reason to "amend" the motion for summary judgment.  That motion will be denied.  The defendant is not entitled under theories of recoupment or setoff to a credit for the value of, or expenses associated with, any improvement.  "Recoupment . . . is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." *Finish Line v. J.F. Pate & Associates Contractors, Inc.*, 90 So. 3d 749, 754 (Ala. Civ. App. 2012) (internal citations and emphasis omitted). This defense "authorizes the recovery of any damages sustained by the defendant, which grow out of, or are connected with, the matters set forth in the plaintiff's complaint, and in breach of the contract upon which his suit is founded, or in violation of any duty imposed by the contract." *Ewing v. Shaw*, 83 Ala. 333, 335, 3 So. 692, 693 (1888). The defendant argues that he is entitled to "recoupment" of the $250,000.00 in improvements he made because of Synovus's alleged breach of contract. (Doc. 39 at 29). He writes that "Synovus shirked its responsibilities under the Note Modification Agreement, yet still enjoys the value of the improvements made." (Doc. 39 at 30). As shown

As noted by the plaintiff in its motion to amend, the exact amount of the deficiency affects not only the credit to be given the defendant, but also the interest charged after the date of the sale. Accordingly, even though there is no dispute as to the amounts owing through September 17, 2013, until the deficiency issue is determined, the remaining amounts of damages cannot be determined. The issue of the amount of damages from September 18, 2013, onward will also go to trial.

### C.   **The Unjust Enrichment Claim (Count II)**

The plaintiff agrees that "[i]f the Court determines that summary judgment is appropriate on Count I, then dismissal of Count II is warranted, as that Count presents Synovus'[s] claim for unjust enrichment which is pled in the alternative to Count I." (Doc. 36 at n. 10). Accordingly, summary judgment will be denied as to Count II, and that claim will be dismissed with prejudice.

## IV.   **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

---

above, the plaintiff breached no terms of the Note Modification Agreement. The defendant is not entitled to recoup the $250,000.00 in improvements. The concept of "setoff" involves "mutual debts arising from unrelated transactions." *Finish Line v. J.F. Pate & Associates Contractors, Inc.*, 90 So. 3d 749, 754 (Ala. Civ. App. 2012) (internal citations and emphasis omitted). As the defendant contends that the improvements were part of the consideration for the extension on the maturity date of the loan, the two transactions are not unrelated, so there is no "setoff." Even if they were unrelated, as shown above, Synovus is under no contractual obligation to pay these amounts.

1.     The motion to amend the motion for summary judgment is **DENIED**.

2.     As to Count I (breach of promissory note), the court expressly determines that there is no genuine issue of material fact that there was a contract, that the plaintiff performed under the contract, that the defendant did not perform, and that the plaintiff was damaged because of the defendant's non-performance. The plaintiff's motion for summary judgment is **GRANTED** on those issues.

3.     As to Count I, the court also expressly determines that there is no genuine issue of material fact that, as of September 17, 2013, the plaintiff had incurred damages in the amount of $3,733,969.36. Summary judgment is hereby **GRANTED** on that issue.

4.     There remains a genuine issue of material fact as to the amount of the deficiency and the exact amount of damages after September 17, 2013, through the date of judgment. The plaintiff's motion is **DENIED** as to those issues, and the case will proceed to trial on those issues <u>alone</u>.

5.     Summary judgment is **DENIED** as to Count II (unjust enrichment), and that claim is **DISMISSED with prejudice**.

6.     An order will follow setting this case for a final pre-trial conference.

**DONE** and **ORDERED** this 2nd day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge