# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SYNOVUS BANK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:12-CV-3598-VEH |
| | ) |
| **RALPH Q. SUMMERFORD,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF DECISION[1]

### I. PROCEDURAL AND FACTUAL BACKGROUND[2]

Synovus Bank ("Synovus") filed this lawsuit against Ralph Q. Summerford ("Summerford") and Tarrie Hyche ("Hyche") in October of 2012 to recover amounts due on a commercial loan made to these individuals, jointly and severally (the "Loan"). (Doc. 1.) Hyche subsequently filed bankruptcy (Doc. 8), and the Court dismissed him from this action without prejudice. (Doc. 15.) Summerford answered and counterclaimed against Synovus. (Doc. 13.) By memorandum opinion and partial final judgment order dated May 10, 2013, this Court dismissed

---

[1] No trial transcript having been filed in, this Memorandum of Decision was prepared based on the undersigned's recollection and trial notes, the exhibits admitted at trial, and the pleadings of record in this case.

[2] This section is taken virtually *verbatim* from the court's Pretrial Order (Doc. 46).

1

Summerford's counterclaims with prejudice. (Docs. 28 and 29.)

In September of 2013, Synovus moved for summary judgment on Count I of its Complaint, for breach of the promissory note evidencing the Loan, and requested judgment against Summerford in the amount of $3,739,469.36 plus pre-judgment interest from September 18, 2013, to the date of entry of judgment, as well as post-judgment interest on the principal portion of the damages award at the contract interest rate. (Doc. 36.) In February of 2014, while its summary judgment motion was pending, Synovus foreclosed the real estate mortgaged to it to secure the Loan, resulting in a reduction in the indebtedness owed on the Loan. (Doc. 42.) Accordingly, Synovus moved to amend its summary judgment motion in order to reduce the recovery sought by it. (*Id.*)

By memorandum opinion and order dated July 2, 2014 (Doc. 43), the Court granted partial summary judgment in favor of Synovus on its claim against Summerford, ordering: (A) that there was a contract, that Synovus performed under the contract, that Summerford did not perform, and that Synovus was damaged because of Summerford's non-performance; and (B) that Synovus had incurred damages in the amount of $3,733,969.36 as of September 17, 2013. (Doc. 43 at 23, ¶¶ 2-3.) The Court denied Synovus's motion to amend and determined that there remained genuine issues of material fact as to the amount of the deficiency and the exact amount of damages incurred by Synovus after September

17, 2013 through the date of judgment. (*Id*. at 23, ¶ 4.)  The Order states, "[T]he case will proceed to trial on those issues alone." (*Id*.) (emphasis in original).

In the Pretrial Order, the parties stipulated to the calculation of the principal, interest, and late fees owing on the Loan as of August 14, 2014, but Summerford disputed the sufficiency of Synovus's credit bids (at foreclosure of the three real estate parcels that secured the Loan) and denied liability for the deficiency. Further, the parties also stipulated that, from and after August 14, 2014, interest accrued at the rate of $146.62 per diem.

No party requested a jury trial. Synovus submits that it is entitled to judgment against Summerford for the deficiency owing on the Loan, including unpaid principal, accrued unpaid interest, late fees, and attorneys' fees and expenses. Summerford denies that Synovus is entitled to judgment against him. (Doc. 46 at 3). Further, he disputes the sufficiency of the credit bid for the Smith Lake Property. He no longer disputes the sufficiency of the credit bid for the other two parcels.[3] Additionally, he does not dispute that there are no additional reductions due to be applied to the Loan beyond those set out in the Pretrial Order.[4]

A one day bench trial was held on November 10, 2014, before the undersigned judge. Pre-trial briefs were filed by both parties. No post-trial briefs

---

[3] Oral stipulation by the parties at trial.

[4] Oral stipulation by the parties at trial.

3

were requested.

Pursuant to Rule 52, Fed.R.Civ.P., the Court now finds the facts specially and states separately its conclusions of law thereon.

## II. FINDINGS OF FACT

**A.     Undisputed Facts[5]**

1. The Loan was secured by three real estate parcels (the "Real Property") more particularly described in the Mortgage Foreclosure Deeds (the "Foreclosure Deeds") attached as Exhibit 1 to the Affidavit of Jeffrey Spielberger dated February 20, 2014. (Doc. 42.)

2. True and correct copies of the Foreclosure Deeds are filed of record in the case. (Doc. 42-2).

3. As evidenced by the Foreclosure Deeds, Synovus conducted mortgage foreclosure sales of the parcels comprising the Real Property and was the prevailing bidder for the Real Property at the mortgage foreclosure sales.

4. Prior to foreclosing, Synovus obtained appraisals of the three parcels comprising Real Property (collectively, the "Appraisals").

5. One Appraisal, dated May 1, 2013, listed the "as is" market value of one of the parcels (referred to herein as the "Smith Lake Property") as $1,975,000.00, in the opinion of the appraiser, as of April 23, 2013.

---

[5]These facts are taken from the Pretrial Order.

6. A second Appraisal, dated November 10, 2013, listed the "as is" market value of another of the parcels (referred to herein as the "Timber Tract") as $52,000.00, in the opinion of the appraiser, as of November 1, 2013.

7. The third Appraisal, dated November 5, 2013, listed the "as is" market value of the third parcel (referred to herein as the "Lake House") as $217,000.00, in the opinion of the appraiser, as of November 5, 2013.

8. Based on the Appraisals, the Real Property had an aggregate appraised value of not less than $2,244,000.00 according to the opinions contained in the Appraisals.

9. Synovus's credit bids for the Real Property totaled $2,086,920.00 (the "Credit Bid Amount"), $1,836,750.00 for the Smith Lake Property, $201,810.00 for the Lake House, and $48,360.00 for the Timber Tract.

10. In each case, Synovus's credit bid was 93 percent (93.0 %) of the appraised value for the parcel based on its Appraisal thereof.

11. Both Summerford and Hyche have a statutory right to redeem the Real Property from the foreclosure sales thereof.

12. No party holding a statutory right to redeem the Real Property from the foreclosure sales thereof has exercised that right to date.

13. Synovus applied the Credit Bid Amount to the unpaid principal balance of the Loan on February 3, 2014, reducing the unpaid principal balance of the Loan to

$1,337,846.86.

14.     On July 31, 2014, Synovus received from Hyche and his spouse, Hilda Hyche, a check in the amount of $18,253.12 for insurance proceeds payable in respect of the foreclosed Lake House.

15.     The insurance proceeds were applied to the unpaid principal balance of the Loan on July 31, 2014, further reducing the unpaid principal balance of the Loan to $1,319,593.74.

16.     Based on the above reductions to the principal balance of the Loan, the unpaid principal balance of the Loan totaled $1,319,593.74 as of August 14, 2014, accrued unpaid interest on the Loan totaled $255,308.01 as of August 14, 2014, and late fees totaled $13,548.69 as of August 14, 2014. Summerford does not dispute the calculation of the principal, interest and late fees owing on the Loan as of August 14, 2014, based on the Credit Bid Amount, but Summerford does dispute the sufficiency of Synovus's credit bid (as to the Smith Lake Property <u>only</u>) and denies liability for any deficiency.

17.     From and after August 14, 2014, and based on the unpaid principal balance set forth above, interest is accruing on the unpaid principal balance of the Loan at the rate of $146.62 per diem.  This per diem interested rate was computed on the basis that each year contains 360 days, by multiplying the unpaid principal amount by the per annum interest rate floor of four percent (4.00%) and dividing the

product so obtained by 360.  Summerford does not dispute the calculation of the per diem rate of interest, but Summerford does dispute the sufficiency of Synovus's credit bid (as to the Smith Lake Property <u>only</u>) and denies liability for any deficiency.

18.    Based on a Loan Modification Agreement dated effective December 19, 2011, the interest rate on the Loan specified by the December 19, 2011 promissory note was reduced from prime plus 1.00% with a 5.00% floor to prime with a 4.00% floor.  Interest has accrued on the Loan at the interest rate floor of 4.00% since December 19, 2011.

19.    In the second amended disclosure statement for Hyche's chapter 11 bankruptcy plan (filed with the United State Bankruptcy Court on July 18, 2013), Hyche listed the value of the Smith Lake Property at $3,290,000.00 based on "Debtor's personal valuation;" the value of the Lake House at $235,640.00 based on a tax assessor's valuation of the property; and the value of the Timber Tract, described as including 40 acres, at $46,000.00 based on a tax assessor's valuation of the property.

20.    During his August 14, 2013, deposition, Hyche testified that, in his opinion, the Smith Lake Property had a value of "somewhere between six and seven million;" that the Lake House had a value of $300,000; and that the Timber Tract had a value of "somewhere around $2,500 an acre."

21. During his August 23, 2013, deposition, Summerford testified that, in his opinion, the Smith Lake Property is "probably worth somewhere around $5 or $6 million" assuming "an orderly development and sale of the property."

24. The current tax assessor value of the Smith Lake Property is $1,645,000.00; the current tax assessor value of the Lake House is $219,960.00; and the current tax assessor value of the Timber Tract is $46,000.00.

**B.     Disputed Facts**

25. The court finds, for the reasons set out in its memorandum opinion and order dated July 2, 2014 (Doc. 43), which is incorporated herein by reference: (A) that there was a contract between Synovus and Summerford, that Synovus performed under the contract, that Summerford did not perform, and that Synovus was damaged because of Summerford's non-performance; and (B) that Synovus had incurred damages in the amount of $3,733,969.36 as of September 17, 2013. (Doc. 43 at 23, ¶¶ 2-3.).

26. Based on the undisputed trial testimony of Jeffrey Spielberger, and the exhibits introduced related to that testimony, since September 17, 2013, Synovus has incurred, as of November 10, 2014, the following amounts in additional fees and costs to collect the Loan, which the court expressly finds to be reasonable:

- Attorneys fees, other fees, and costs................................. $ 96,933.10

27. As an owner of the property, Summerford testified that the value of the Smith Lake Property as of the foreclosure date was between $5,000,000 (Five Million Dollars) and $6,000,000 (Six Million Dollars).

28. Travis Prewett, the MAI-certified real estate appraiser who appraised the Smith Lake Property in April, 2013, testified that the "as is" appraised value of such property, as set out in that appraisal, was $1,975,000 (One Million Nine Hundred Seventy-Five Thousand Dollars) as of April 23, 2013, the date of the appraisal. The court credits that testimony in full, and finds that value to have been established.[6]

29. Prewett calculated the "at completion" value of that property as $2,430,000 (Two Million Four Hundred Thirty Thousand Dollars), assuming a July 23, 2013, completion date. (Plaintiff's Trial Ex. 6 at p. 11.)

30. Prewett testified, and there was no evidence to the contrary, that no lots have sold at Smith Lake since 2012, and that there has been no "appreciable change" in real estate market conditions at Smith Lake between the date of the April 2013 appraisal and February 14, 2014, the date of the foreclosure sale.

31. Specifically, the court finds that the methodology used by Prewett (referred to be Summerford as a "bulk sale" or "fire sale" analysis) was an appropriate

---

[6] The undersigned is aware that it is not required to accept any expert's opinion as the final word. *See Helvering v. Natl. Grocery Co.*, 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346 (1938) ("This Court is not bound by the opinion of any expert witness and may accept or reject expert testimony in the exercise of sound judgment.").

methodology generally employed by real estate appraisers,[7] and was more reliable than the stated but inadequately explained methodology employed by Summerford.

32. Further, Summerford's valuation testimony was not persuasive due to: (i) his lack of experience, training, or expertise in real estate appraisals;(ii) his failure to explain why, as a non-expert, he could rely on the appraisal performed by Prewett but substitute what he considered to be a more appropriate value for the lots[8]; (iii) his failure to explain why it was reasonable for him to consider, in arriving at the value he placed on the Smith Lake Property, that there would be a total of 35 waterfront lots, when no documents showed that any "lots" had ever even been surveyed[9] other than the first phase lots, comprised of 13 waterfront lots and 7 non-waterfront lots; (iv) his failure to explain why an eight-year across-the-board sell-out period was a more reasonable time period to apply than the 4.5 year period applied by Prewett to waterfront lots and the 6.5 year period applied by Prewett to

---

[7]At trial, Synovus established Prewett's credentials to testify as to his opinion and further established his methodology underlying his opinion and that such methodology was consistent with his experience and training as a certified real estate appraiser. At no time did Summerford, either through his testimony or through his counsel's cross-examination of Prewett, call into question Prewett's credentials or methodology in general. Specific criticisms of Prewett's opinion will be set out in more detail in the body of this opinion.

[8]The court is aware of no evidentiary or other rule creating a hearsay exception for non-experts such that Summerford could properly testify in this manner, even though, if he were an expert, such testimony would clearly be proper. *See United States v. Steed*, 548 F.3d 961, 975 (11th Cir.2008) (holding that, pursuant to Federal Rule of Evidence 703, an expert witness may base his testimony on inadmissible information so long as such information is "regularly relied upon by experts in his field.")

[9]Summerford testified that no "plat" of the proposed subdivision was ever filed, even as to the "first phase," which would consist of 20 lots --- 13 waterfront and 7 non-waterfront.

non-waterfront (e.g. "interior") lots; (v) his failure to explain why his 9% discount factor was more appropriate than the 25% discount fact applied by Prewett;[10] and (vi) his direct financial interest in the case.[11]

33. There are no facts to indicate that the Synovus's February 14, 2014, foreclosure sale of the Smith Lake Property, at which it was the purchaser, was not conducted in good faith and fairly.

34. It is undisputed that Synovus's Credit Bid for the Smith Lake Property was $1,836,750 (One Million Eight Hundred Thirty-Six Thousand Seven Hundred Fifty Dollars). That sum is 93% of the "as is" market value of the Smith Lake Property as set out in the April 2013 appraisal prepared by Prewett. It also is more than 100% of the tax assessed value of the Smith Lake Property; 55.8% of the value ascribed to the Smith Lake Property by Hyche, a co-owner, in his July 18, 2013 bankruptcy disclosure statement; and (4) 36.7% of the $5.0 million value ascribed to the property by Summerford during his August 23, 2013 deposition, which valuation assumed "an orderly development and sale of the property."

35. An appraisal of real estate is subjective (testimony of Prewett).

---

[10]Conversely, Prewett satisfied the court, both through his trial testimony and his written appraisal (Plaintiff's Trial Ex. 6), as to the reasonableness of his methodology, including the number of lots he considered, the manner in which he compared those lots to other lots at Smith Lake, and the 25% discount factor he applied to the Smith Lake Property.

[11]To be clear, although the court has set out six reasons for finding Summerford's testimony not persuasive, it specifically finds that each reason is independently and alternatively sufficient for the court not to be persuaded by Summerford's testimony.

### III. CONCLUSIONS OF LAW

A.   This Court already has determined that Summerford is liable to Synovus for breach of the subject promissory note (as modified, the "Note") and related Loan documents. (See Doc. 43 at 23, ¶¶ 2-3.) The only issues before the Court are the exact amount of the deficiency owed on the Loan following the foreclosure of the Real Property and the damages incurred by Synovus after September 17, 2013 through the date of judgment. (*Id*. at 23, ¶ 4.)

B.   As set forth in the Court's Pretrial Order (Doc. 46), Synovus's calculation of the principal, interest, and late fees owing on the Loan, after applying all post-September 17, 2013 credits, is not disputed by Summerford. (*See* Doc. 46 ¶ 5(b)(xvi).) Summerford acknowledges that Synovus's foreclosure credit bids (totaling $2,086,920.00) and a post-foreclosure payment made by Hyche (in the amount of $18,253.12) were applied to the unpaid principal balance of the Loan, reducing the principal balance to $1,319,593.74 as of August 14, 2014. (*See* Doc. 46 ¶ 5(b)(xi), (xiii)-(xv).) Further, Summerford acknowledges that, based on the aforementioned reductions to the principal balance of the Loan, the accrued interest on the Loan totaled $255,308.01 as of August 14, 2014, and the late fees owed as of August 14, 2014 totaled $13,548.69. (*See id*. at ¶ 5(b)(xvi)-(xvii).) Summerford also agrees that interest is accruing on the principal balance of the Loan at the prime rate with a floor of four percent (4.0 %) per annum. (*See id*. at ¶

5(b)(xvii).)  The evidence presented at trial showed that Synovus has not received or applied any additional payments or credits since the date of the Pretrial Order, and established the precise amount of the interest accrued from August 14, 2014, through the date of trial.

    C.    Based the Court's prior summary judgment rulings, the parties' stipulations in the Pretrial Order, and the evidence presented at trial, Synovus has established its prima facie right to recover a judgment for (1) the outstanding principal balance of the Loan in the amount of $1,319,593.74, (2) the accrued interest on the Loan as of the date of trial in the amount of $268,210.70, and (3) the late fees in the amount of $13,458.69.  *See, e.g., Ross v. Rogers*, 25 So.3d 1160, 1166-1168 (Ala. Civ. App. 2009); *Farm Credit of Northwest Florida, ACA v. McKelvy*, 2011 WL 2516708, at *3 (M.D. Ala. June 23, 2011).

    D.    Synovus also is entitled to pre- and post-judgment interest on the unpaid, principal portion of Synovus's damages award at the interest rate specified by the parties' agreements, which is prime with a floor of four percent (4.0%).  *See ITT Diversified Credit Corp. v. Lift & Equip. Serv., Inc.* (*In re Life & Equip. Serv., Inc.*), 816 F.2d 1013, 1018 (5th Cir. 1987); *see also Planned Furniture Promotions, Inc. v. Benjamin S. Youngblood, Inc.*, 2007 WL 1970879, at *FN2 (M.D. Ga. 2007).

    E.    In addition to the principal, interest, and late fees owing on the Loan,

13

the Court previously held that Synovus was entitled to an award of its attorneys' fees and expenses incurred as of September 17, 2013, in the amount of $121,751.76, which amount remains unpaid.  The evidence presented at trial shows that, since September 17, 2013, Synovus has incurred additional attorneys' fees and expenses to collect the Loan in the amount of $96,933.10.  Like the pre-September 17, 2013, attorneys' fees incurred by Synovus, Synovus is entitled to recover its reasonable, post-September 17, 2013 attorneys' fees and expenses.  Further, '[t]he court is presumed to have knowledge, even without evidence, from which it may set such a fee'." *Robbins v. Smith*, 495 So. 2d 577, 580 (Ala. 1986) (citation omitted); *see also Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, at *4 (S.D. Ala. Jan. 24, 2012) (same).  The Court concludes that an award of $96,933.10 for Synovus's post-September 17, 2013, fees and expenses, is reasonable.

  F. In defense to Synovus's claim for the deficiency owed on the Loan, Summerford challenges the sufficiency of Synovus's foreclosure Credit Bid for the Smith Lake Property.  Alabama case law is well settled regarding the duties of a mortgagee in conducting a power of sale foreclosure.  In the seminal ruling from the Alabama Supreme Court, the court held that a foreclosure sale will not be set aside on inadequate price alone unless the price realized "is so inadequate as to shock the conscience." *Hayden v. Smith*, 113 So. 293, 295 (Ala. 1927).  "The fair market value of the property at the time of the foreclosure is the key fact in

deciding this issue." *In re Sharp*, 425 B.R. 620, 632 (Bankr. N.D. Ala. 2010). While each case must be judged on its own facts and circumstances, the Alabama Supreme Court has held that a foreclosure bid equal to 81% of the appraised value of the subject property is not inadequate. *Mt. Carmel Estate, Inc. v. Regions Bank*, 853 So. 2d 160 (Ala. 2002); *see also Vision Bank v. Lanza*, 2011 WL 5190847, at *4 (S.D. Ala. 2011) (the Southern District, applying Alabama law, held that a reasonable fact finder could not find that a foreclosure price of 72% of the property's alleged fair market value was shockingly inadequate); *Breen v. Baldwin County Federal Savings Bank*, 567 So. 2d 1329, 1332-1333 (Ala. 1990) (affirming the trial court's grant of summary judgment despite debtor's claim that the bank's credit bid accounted for only 54% of the alleged fair market value of the property); *Walker v. North America Sav. Bank,* 142 So.3d 590, 598-99 (Ala. Civ. App. 2013) (upholding a foreclosure bid price equal to 91.5% of the alleged fair market value of the property, which was based on the tax assessor's records); *Perry v. Federal National Mortgage Association*, 100 So.3d 1090, 1102 (Ala. Civ. App. 2012) (upholding foreclosure bid price equal to 84% of the alleged fair market value of the property, which was based on the tax assessor's records).

  G. Significantly, in a recent unpublished Eleventh Circuit decision interpreting Alabama law, the Court of appeals affirmed the trial court's ruling that a foreclosure sale price equal to 20%, 30%, or 66% of a property's fair market

15

value (depending on the appraisal used) was not so inadequate as to shock the judicial conscience). *See CS Assets, LLC v. W. Beach, LLC*, 370 Fed. Appx. 45, 46 (11th Cir. 2010). As the Court of Appeals explained:

> In the case at issue, the lender acquired the property for 20%, 30%, or 66% of its fair market value, depending on the appraisal used. But the choice of percentage is not as determinative in the end as the observation that no misconduct tainted the auction. The pleadings in the district court created no genuine issue as to the propriety of the sale or the adequacy of the notice. The investors concede they knew about the auction. (We also note that the investors declined to exercise their statutory right of redemption in the year following the sale.) In the absence of any issue of impropriety, this sale must stand. The trial court did not err in concluding the sale price did not shock the judicial conscience.

*Id*.

H. Ultimately, Summerford's challenge to the sufficiency of Synovus's foreclosure credit bid is an affirmative defense,[12] on which Summerford bears the burden of proof as to all essential elements. *See Ross v. Rogers*, 25 So.3d 1160, 1166-1167 (Ala. Civ. App. 2009) (holding that the defendants—who contended the mortgagee had created an artificial deficiency on a promissory note by bidding an

---

[12] "[A] defense…asserting errors in the foreclosure process is a collateral attack on a foreclosure." *Campbell v. Bank of America, N.A.*, 141 So.3d 492, 494 (Ala. Civ. App. 2012). "In a proceeding involving a collateral attack on a foreclosure…only those circumstances that would render the foreclosure sale void may be raised as an affirmative defense." *Id*. "In Alabama, the following circumstances may render a foreclosure sale void: (1) when the foreclosing entity does not have the legal right to exercise the power of sale, as, for example, when that entity is neither the assignee of the mortgage…nor the holder of the promissory note… at the time it commences the foreclosure proceedings; (2) when 'the debt secured by the mortgage was fully paid prior to foreclosure'…; (3) when the foreclosing entity failed to give notice of the time and place of the foreclosure sale…; and (4) when the purchase price paid is 'so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.'" *Id.* at 495-96 (citations omitted).

inadequate amount at foreclosure—failed to satisfy their burden of proof; the defendants had offered no evidence of the value of the property at the time of the foreclosure sale, "a necessary factual predicate for any determination as to whether the price paid at the foreclosure sale 'was so inadequate as to raise a presumption of fraud, unfairness, or culpable mismanagement'"); *see also Renasant Bank v. Lake Cyrus Development Co., Inc.*, 2012 WL 3637603, at *10 (N.D. Ala. August 20, 2012) (holding that it is the defendant's burden to offer sufficient evidence on which a reasonable fact-finder could conclude that the foreclosure bid price was so low as to shock the conscience); *Breen v. Baldwin County Federal Sav. Bank*, 567 So. 2d at 1331-1332.

    I.    Summerford has not satisfied his burden of proof. There is no dispute that Synovus's Credit Bid for the Smith Lake Property, which was $1,836,750: (1) equaled 93% of "as is" market value of the Smith Lake Property set forth in the May 2013 Appraisal of the Smith Lake Property prepared for Synovus; (2) equaled more than 100% of the current tax assessor value of the Smith Lake Property; (3) equaled 55.8% of the value ascribed to the Smith Lake Property by Hyche, a co-owner, in Hyche's July 18, 2013 bankruptcy disclosure statement; (4) equaled 36.7% of the low end of the value ascribed to the property by Summerford ($5 Million to $6 Million), and 30.6% of the high end of that value. A foreclosure sale price equal to 30.6%, 36.7%, 55.8%, 93%, or more than 100% of the value of the

Smith Lake Property (depending on the valuation used) is not so low as to shock the judicial conscience in the absence of any challenge to the propriety or notice of the sale. *See, e.g.*, *CS Assets, LLC v. W. Beach, LLC*, 370 Fed. Appx. at 46.

    J.    Although it is undisputed that Summerford, Hyche, and Wayne Riggs purchased the Smith Lake Property for $3,830,000.00 on November 10, 2006, and that Synovus obtained an appraisal that valued the property at $4,026,000.00 as of January 3, 2007, the dates of the November 2006 sale and January 2007 appraisal are so remote as to render the sale price and appraised value of little, if any, relevance to the question of the value of the property as of the date of the foreclosure, particularly give the intervening downturn in the real estate market. *See generally Thornton v. City of Birmingham*, 250 Ala. 651, 653-657, 35 So.2d 545, 546 (Ala.1948) ("The general rule, supported by overwhelming authority, is that evidence of the price paid by the owner for the property…is admissible as tending to illustrate or bearing probatively on its market value, unless the sale was too remote in point of time from the…proceedings as to afford no fair criterion of present value, or if otherwise shown to be without probative force, as where the sale was not a voluntary one or where other special considerations conduced the sale at other than the true market value."). However, even accepting the November 2006 sale price and January 2007 appraisal as credible evidence of the value of the property as of the date of the foreclosure, Synovus's credit bid equaled 47.96% of

the original purchase price of the property, and 45.6% of the 2007 appraised value. Such a credit bid is not so low as to shock the judicial conscience.

K. Based on the foregoing, the Court concludes that, as of November 20, 2014, Synovus is entitled to judgment against Summerford in the total amount of $1,821,414.19, which includes (1) the outstanding principal balance of the Loan in the amount of $1,319,593.74, (2) the accrued interest on the Loan as of the November 10, 2014, trial in the amount of $268,210.70, (3) late fees in the amount of $13,458.69, (4) Synovus's pre-September 17, 2013, attorneys' fees and expenses in the amount of $121,751.76, (5) Synovus's post-September 17, 2013, attorneys' fees and expenses in the amount of $96,933.10, and (6) pre-judgment interest from November 11, 2014, through November 20, 2014, in the total amount of $1,466.20 (calculated on the basis of the stipulated per diem amount of $146.62 per day). Synovus is also awarded post-judgment interest on the unpaid, principal portion of Synovus's damage award at the contract rate of prime with a floor of four percent (4.0%) per annum, to be calculated on the basis of an Actual/360 computation.

**DONE** and **ORDERED** this 20th day of November, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge